UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHARTER COMMUNICATIONS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:05cv00333 SNL |
| ) | |
| JAMES H. ("TREY") SMITH, III, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

Plaintiff filed this action, seeking repayment of legal costs advanced to its employee for use in defending a criminal indictment and a class action lawsuit. The parties signed an Undertaking Agreement, under which plaintiff promised to advance the funds required for defendant's defense as long as certain terms were met. Defendant plead guilty to one count of the criminal indictment. Plaintiff viewed defendant's admission of guilt as a breach of the Agreement. Countless motions, responses, replies, and amendments have followed. The Court will address several of these motions, each in turn.

*Factual Background*

Defendant was employed by plaintiff as Senior Vice-President of Operations from September 11, 2000 until he resigned in December 20, 2001. While serving as a corporate officer, defendant, along with other parties, engaged in a practice called "managed disconnects." Defendant was instructed by his superiors to refrain from disconnecting the cable television service of non-paying customers. Allegedly, the purpose of this practice was to artificially inflate plaintiff's customer base, improving the financial figures reported at the end of the fiscal quarter.

1

In the summer of 2002, a multi-district federal securities class action lawsuit was filed questioning plaintiff's accounting practices. This class action was subsequently settled in mediation.

The Department of Justice also began investigating the practice of "managed disconnects" in July of 2002. On July 24, 2003 defendant, and three other former employees, were indicted for their participation in the scheme. The indictment charged defendant with seven counts of wire fraud and one count of conspiracy to commit wire fraud. On July 29, 2003, the parties entered into an Undertaking Agreement in which plaintiff agreed to pay all of defendant's attorneys' fees incurred during the criminal and class action lawsuits. The Agreement was governed by Delaware law. It's language mirrored that of the Delaware Corporate Code, requiring that defendant had no reasonable cause to believe his conduct was unlawful. If it was ultimately determined that defendant was not entitled to be indemnified, "any advance payments ... in connection with any of the Proceedings as to which such a determination [was] made" must be repaid.[1]

In January of 2005, defendant entered into a settlement agreement on the criminal charges, pleading guilty to one count of conspiracy to commit wire fraud. Per this agreement, the prosecutor dropped the seven counts of wire fraud and defendant stipulated that he knowingly and willfully agreed to participate in a scheme to defraud plaintiff's shareholders. Plaintiff interpreted this stipulation as a breach of the Undertaking Agreement, and seeks repayment of the attorneys' fees previously advanced to defendant. Defendant claims that plaintiff's bylaws and the Agreement entitle him to full indemnification. He seeks payment for the attorneys' fees not indemnified by plaintiff, the attorneys' fees incurred in the instant action, tort damages for emotional distress, punitive damages for fraudulent concealment, as well as interest and costs.

---

[1]Undertaking Agreement, ¶ 2.

### *Plaintiff's Motion to Dismiss*

The Court will first examine plaintiff's Motion to Dismiss (#32) counts 7-11 of defendant's counterclaim, filed on May 31, 2005.[2] These counterclaims allege fraudulent concealment, negligent infliction of emotional distress, intentional infliction of emotional distress, and abuse of process.

In passing on a motion to dismiss, a court must view the facts alleged in the counterclaim in the light most favorable to the defendant. Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Toombs v. Bell, 798 F.2d 297, 298 (8th Cir. 1986). The court should not grant a motion to dismiss merely because the claim does not state with precision every element of the offense necessary for recovery. 5 Wright & Miller, Federal Practice and Procedure: Civil, Sec. 1216 at 120 (1969). A claim is sufficient if it contains "allegations from which an inference can be drawn that evidence on these material points will be introduced at trial." Id. at 122-123. Moreover, a court should not dismiss a claim unless it "appears beyond doubt that the [defendant] can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

The Court must view the counterclaim in the light most favorable to the defendant and should not dismiss it merely because the Court doubts that the defendant will be able to prove all of the necessary allegations. Bennett v. Berg, 685 F.2d. 1053, 1058 (8th Cir. 1982). Thus, a motion to dismiss is likely to be granted "only in the unusual case in which a [defendant] includes

---

[2]Count 11 was voluntarily dropped by defendant for failure to comply with the proper procedural requirements.

allegations that show on the face of the complaint that there is some insuperable bar to relief."
Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir. 1982).

The Court will first address defendants' claim for fraudulent concealment (Count 7). Defendant asserts that plaintiff fraudulently concealed the fact that a guilty plea would constitute a breach of the Undertaking Agreement. Missouri follows the Restatement approach to this tort. Kesselring v. St. Louis Group, Inc., 74 S.W.3d 809, 814 (Mo. Ct. App. 2002). Non-disclosure is only actionable when the party has a duty to disclose. Restatement (Second) Torts § 551(1). There are five situations in which one party to a business transaction has a duty to disclose information to the other party. They are:

> (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and
> (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and
> (c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and
> (d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and
> (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Restatement (Second) Torts § 551(2). Defendant's counterclaim contained allegations that, if properly developed at trial, could give rise to a duty to disclose under several of the above theories. Therefore, there is no insufferable bar to relief on this claim.

Next, the Court will address defendant's distress claims. To be succinct, defendant has no claim for intentional or negligent infliction of emotional distress. Charter has brought a suit with merit. This suit was not brought solely with vexatious intent, it was brought to recover money.

4

Distress resulting from this lawsuit is not redressable. Not every hurt feeling is compensable in a court of law. Counts 8 and 9 of defendant's counterclaim are dismissed.

Lastly, the Court will address defendant's claim for abuse of process. To withstand a motion to dismiss on this claim, defendant's petition must set forth facts establishing the following elements: "(1) the present defendant made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; (2) the defendant had an improper purpose in exercising such illegal, perverted or improper use of process; and (3) damage resulted." Ritterbusch v. Holt, 789 S.W.2d 491, 493 (Mo. 1990). "If the suit is brought for a collateral purpose, there is abuse of process." Wells v. Orthwein, 670 S.W.2d 529, 532 (Mo. Ct. App. 1984). But "[n]o liability is incurred where the [party] has done nothing more than pursue the lawsuit to its authorized conclusion regardless of how evil his motive might be." Teefey v. Cleaves, 73 S.W.3d 813, 818 (Mo. Ct. App. 2002) (internal quotations omitted). Where there is a reasonable relationship between the recovery sought and the suit filed, there is no abuse of process. Kopp v. Franks, 792 S.W.2d 413, 425 (Mo. Ct. App. 1990).

According to defendant, the motivation behind this suit is not monetary recovery. Instead "the true and thinly-veiled motive for this lawsuit ... is to create a smokescreen to direct attention from the truth that the proximate cause of Charter's financial difficulties and poor stock performance has been the ill-considered business and legal judgment made by" plaintiff's management.[3] Although the Court must take all facts in the light most favorable to the defendant, the Court need not don a straightjacket when doing so. Wild assertions are not sufficient to maintain a claim of abuse of process. Count 10 of defendant's counterclaim is dismissed.

---

[3]Defendant's Amended Answer at 26.

## *Motions for Partial Summary Judgment*

Now the Court will address Plaintiff's Motion for Partial Summary Judgment (#77), filed July 1, 2005 and Defendant's Motion for Partial Summary Judgment (#23), filed May 10, 2005. Plaintiff's motion requests the Court to grant summary judgment in its favor on its complaint and on Counts 2, 3, 5 and 6 of defendant's counterclaim, entitling plaintiff to repayment of the fees and expenses advanced to defendant. Defendant's motion requests the Court to grant summary judgment on Counts 1 through 6 of its counterclaim, which state that the Undertaking Agreement and plaintiff's bylaws entitle defendant to reimbursement for the amount spent on his own defense. Plaintiff concedes defendant's right to recover on Counts 1 and 4 of his counterclaim, which demand repayment for the legal costs incurred in defending the class action.

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those cases that really do raise genuine issues of material fact." City of Mt. Pleasant v. Associated Elec. Co-op. Inc., 838 F.2d 268, 273 (8th Cir. 1988). Because this case involves contract and statutory interpretation, the issues can be appropriately resolved on summary judgment. See Contract Freighters, Inc. v. J.B. Hunt Transport, Inc., 245 F.3d 660, 663 (8th Cir. 2001) ("Interpretation of an unambiguous contract provision is a question of law suitable for summary judgment."); Prudential Ins. Co. of Am. v. Rand & Reed Powers Partnership, 972 F. Supp. 1194, 1202-03 (N.D. Iowa 1997), aff'd, 141 F.3d 834 (8th Cir.1998) (issues involving statutory interpretation are particularly appropriate for a summary judgment determination).

Pursuant to Fed. R. Civ. P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Poller v. Columbia Broadcasting Sys., Inc., 368 U.S. 464, 467, 82 S. Ct. 486, 7 L. Ed. 2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir. 1983). The Court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976). With that in mind, the Court moves on to the parties' motions.

Both the Undertaking Agreement and plaintiff's bylaws apply the Delaware Corporate Code, therefore the Court will apply Delaware law to its examination. Section 145 of the Delaware Corporate Code provides the proper framework for an indemnification analysis. The applicable provisions are 145(a) and (c). Section 145(a) limits a corporation's ability to indemnify an officer.

7

> A corporation shall have power to indemnify any person who was or is a party ... to any threatened, pending or completed action, suit or proceeding, whether civil [or] criminal ... if the person acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe the person's conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which the person reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, had reasonable cause to believe that the person's conduct was unlawful.

8 Del. C. § 145(a). Section 145(c) delineates the situations in which a corporation is required to indemnify corporate officers by law.

> To the extent that a present or former director or officer of a corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in subsections (a) and (b) of this section, or in defense of any claim, issue or matter therein, such person shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by such person in connection therewith.

8 Del. C. § 145(c). The Delaware Supreme Court dictates that this indemnification statute is not to be interpreted narrowly. See Stifel Fin. Corp. v. Cochran, 809 A.2d 555, 561 (Del. 2002).

The Court will first examine if Section 145(c) of the Delaware Corporate Code requires plaintiff to indemnify defendant's costs, as a matter of law. According to Delaware law, if a defendant was party to a "suit or proceeding referred to in subsections (a) and (b)" by reason of the fact that he was an officer of the corporation, his employer must indemnify him against the expenses incurred if he was "successful on the merits or otherwise in defense of any ... claim, issue or matter therein" 8 Del. C. § 145(c). It is undisputed that defendant was a corporate officer and that he was involved in a lawsuit by reason of his position. But the parties dispute the meaning of the statutory phrase "suit or proceeding referred to in subsections (a) and (b) of this section." The Delaware Supreme Court has yet to rule on this issue. Consequently, the Court

"must predict how the state's highest court would rule if faced with the same question." Marvin Lumber & Cedar Co. v. PPG Indus., 401 F.3d 901, 918 (8th Cir. 2005).

Plaintiff asserts that the reference to subsections (a) and (b) in the statute incorporates the standards of conduct described in (a), namely that defendant must have had no reasonable cause to believe his conduct was unlawful to obtain indemnification. The defendant disagrees. A lower Delaware court examined this issue in Green v. Westcap Corp. of Del., 492 A.2d 260 (Del. Super. Ct. 1985). According to Green, the reference in subsection (c) serves to define the types of actions to which subsection (c) applies, it does not set a requisite standard of conduct. Section 145(c) requires success, not purity of motive.[4] This issue has not been reexamined in any other Delaware opinions and the Delaware Supreme Court made no attempt to overturn this interpretation. Therefore, it is the Court's prediction that the highest court in Delaware would follow the interpretation of Section 145(c) espoused in Green.[5] Accordingly, it is irrelevant to this analysis whether defendant knew he was acting unlawfully when he participated in the "managed disconnects" scheme. The relevant question is whether Delaware law would consider a defendant who pled guilty to one count of a criminal indictment "successful" as to the seven counts of the indictment dropped as a result of the plea bargain.

---

[4]"[T]hat reference in subsection (c) is in defining the type of 'action, suit or proceeding' to which subsection (c) applies. Under subsection (a), the type of action is 'any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the corporation)' .... The portions of subsections (a) and (b) which [plaintiff] would read into subsection (c) do not define the 'action, suit or proceeding' referred to in subsections (a) and (b). Instead, they relate to qualifications which must be met in order to obtain indemnification under those subsections." Green, 492 A.2d at 264.

[5]Other federal courts have agreed with this Court's interpretation of 145(c). See Waltuch v. Conticommodity Servs., Inc., 88 F.3d 87, 96 (2d Cir. 1996) (stating that "vindication, when used as a synonym for "success" under § 145(c), does not mean moral exoneration").

The oft cited case, Merritt-Chapman & Scott Corp. v. Wolfson, 321 A.2d 138 (Del. Super. Ct. 1974), is informative on this point. In Merritt-Chapman, a corporate employee pled *nolo contendere* to one count of a criminal indictment. All other charges were dropped. The employer argued that it was not required to indemnify the employee under 145(c) because of the plea. The court found that Section 145(c) required that the employer indemnify the employee for attorneys' fees and expenses incurred in defending the dropped charges. In making this determination, the court stated:

> Success is vindication. In a criminal action, any result other than conviction must be considered success. Going behind the result ... is neither authorized by subsection (c) nor consistent with the presumption of innocence. The statute does not require complete success. It provides for indemnification to the extent to success 'in defense of any claim, issue or matter' in an action. Claimants are therefore entitled to partial indemnification if successful on a count of an indictment, which is an independent criminal charge, even if unsuccessful on another, related count.

Merritt-Chapman, 321 A.2d at 141. Thus, under Delaware law, if a defendant pleads *nolo contendere* to one criminal charge, he is successful on the merits and entitled to indemnification for expenses incurred in defending the dropped charges.

Because Section 145(c) does not authorize "going behind the result," the Court sees no distinction between a *nolo contendere* plea and a guilty plea. Delaware law requires that a defendant who is partially successful on a claim be indemnified for the costs incurred. Defendant successfully defended seven counts of wire fraud "on the merits or otherwise." Plaintiff must indemnify defendant for all reasonable costs and attorneys' fees incurred in relation to those charges. Plaintiff is not entitled to recover the moneys previously advanced to defendant in the defense of the seven counts. Summary judgment is granted in favor of defendant as to Counts 3 and 6 of Defendant's Amended Counterclaim.

The Court's analysis of the costs and attorneys' fees incurred in defending the final charge, that to which he pled guilty, is much different. A guilty plea becomes a judgment of conviction when the court accepts the plea and sentences the defendant.[6] As stated in Merritt-Chapman, a conviction is not success. Because Defendant was not vindicated on this charge, there is no mandatory indemnification under Section 145(c). But under Section 145(a) of the Delaware Corporate Code, a corporation is permitted to indemnify a corporate officer, even one who was found guilty, if his conduct fits within certain moral standards. 8 Del. C. § 145(a). This permissive indemnification can be made mandatory through bylaw or agreement. Plaintiff has done so. Article 10 of plaintiff's bylaws state that employees will be indemnified "to the fullest extent authorized by the Delaware General Corporation Law."[7] This phrase obligates plaintiff to indemnify defendant if he met the applicable standard of conduct in subsection (a).[8]

That being said, defendant has not met the standard of conduct to qualify for indemnification on this charge. In his plea agreement, Defendant admitted that he "did knowingly and willfully agree with others to participate in a scheme to defraud Charter's stockholders."[9] In addition, Defendant states that he "knew the purpose of [the managed disconnect process] ... was to inflate Charter's quarterly growth in subscriber numbers that were intended to be reported to the public."[10] Given these admissions, defendant cannot now assert that he had no reasonable

---

[6] Kercheval v. United States, 274 U.S. 220, 223, 47 S. Ct. 582, 71 L. Ed. 1009 (1927) ("A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction.").

[7] Charter Communications Bylaws, § 10.1.

[8] See 1 R. Franklin Bolotti & Jesse A. Finkelstein, The Delaware Law of Corporations and Business Organizations § 4.14 (2d ed. Supp. 1996).

[9] Plea Agreement at 9.

[10] Plea Agreement at 10.

cause to believe his conduct was unlawful. Defendant is not entitled to indemnification for the costs incurred in defending this count. Summary judgment is granted in favor of plaintiff on Counts 2 and 5 of Defendant's Amended Counterclaim. Defendant must repay the costs and attorneys' fees plaintiff advanced for the defense of this count.

Because plaintiff is only responsible for a portion of defendant's attorneys' fees and costs, the Court must now determine how to calculate the monetary value of that portion. There is a dispute as to whether this should be determined by number of hours spent on the specific charges or by percentage of the counts dismissed. The Court agrees with plaintiff's interpretation. Defendant is not entitled to a reimbursement of 7/8ths of the attorneys' fees and expenses simply because seven of the eight charges were dropped. He can only be indemnified on the exact amount spent on defending the seven dropped charges. Defendant has the burden of proof as to this amount.[11] The Court does not have sufficient information before it to determine the dollar amount attributable to the seven dropped charges versus the conspiracy charge.[12]

In summary, Plaintiff's Motion for Partial Summary Judgment (#77) is granted in part and denied in part and Defendant's Motion for Partial Summary Judgment (#23) is also granted in part and denied in part. Defendant has shown that he is entitled to repayment of the fees advanced in connection with the seven counts of wire fraud as a matter of law. Therefore summary judgment is granted in favor of Defendant as to Counts 3and 6 of Defendant's Amended Counterclaim.

---

[11] See May v. Bigmar, Inc., 838 A.2d 285, 289 (De. Ch. 2003) (stating that in a partial indemnification case, an employee must prove what expenses were "actually and reasonably" incurred in defending the indemnified portion).

[12] In addition, the Court would like to note its surprise at the size of the legal bills defendant incurred. $3,037,330.72 in fees and expenses for a criminal matter resolved by a pre-trial plea bargain seems extraordinary. The Court cannot determine the monetary value of the judgment until it is assured that these fees and expenses are reasonable.

Plaintiff has proven that it is entitled to relief as to the monies spent defending the conspiracy count as a matter of law. Defendant must repay all legal costs advanced for the defense of that claim. Claims 2 and 5 of Defendant's Amended Counterclaim are dismissed.

### *Plaintiff's Motion for Sanctions*

The Court will next address plaintiff's Motion for Sanctions (#34), filed May 31, 2005. As previously mentioned, the parties were involved in a class action lawsuit that was referred to mediation. All parties to the mediation, including defendant's attorney, signed a confidentiality agreement. The agreement was subject to Local Rule 16-6.04(A) and extended to all future judicial proceedings. Notwithstanding the confidentiality agreement, defendant quoted from plaintiff's Confidential Mediation Brief in defendant's Answer to Complaint, Notice of Filing, and Amended Answer to Amended Complaint.[13] In addition, in defendant's Response to Plaintiff's Motion for Sanctions, defendant attached a court memorandum that was previously filed under seal in a previous action. All of these documents were public filings. Plaintiff requests that the Court sanction defendant for violating the confidentiality agreement and strike the offending documents.

Defendant objects to plaintiff's request on several grounds. Initially, defendant refutes the Court's ability to sanction his actions. The Court has certain inherent powers. Among these is the power to "sanction for conduct which abuses the judicial process." Chambers v. NASCO, Inc., 501 U.S. 32, 44-45, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). Releasing confidential

---

[13]Plaintiff also alleges that defendant provided its Answer to a journalist at the Wall Street Journal, thereby ensuring that the confidential information was made public. Defendant has not denied this allegation.

documents to the public by filing them with this Court abuses the judicial process. It is well within the Court's powers to sanction defendant for his conduct.

Defendant next quotes <u>Chambers</u>, stating that "the court ordinarily should rely on the rules rather than the inherent power." <u>Id.</u> at 50. Because of this, defendant believes his conduct should be addressed according to Federal Rule of Civil Procedure 26(c) or Federal Rule of Evidence 408 rather than through the Court's sanctioning power. But <u>Chambers</u> also states that "if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power." <u>Chambers</u>, 510 U.S. at 50. The Rules of Civil Procedure and the Federal Rules of Evidence do not address defendant's conduct, they simply maintain the inadmissibility of the confidential information. The rules are not "up to the task" of fully addressing defendant's actions.

Next, defendant attempts to explain why Local Rule 16-6.04 is invalid. Defendant explains how our local rule conflicts with Federal Rule of Civil Procedure 9(b) because complying with a confidentiality agreement would preclude his ability to plead his claim with particularity. There are other sources of information beyond those protected by a confidentiality agreement. Defendant also claims that our local rule conflicts with Federal Rule of Evidence 408. According to defendant, because Rule 408 "does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise discussion," the rule supercedes Rule 16-6.04. Fed. R. Ev. § 408. Rule 408 is an exclusionary rule, not an "inclusionary" rule. The Court does not wish to get into a prolonged discussion as to the effect of an exclusionary rule. Suffice it to say that Rule 408 does not require that any evidence be admissible, only that certain evidence be inadmissible.

Defendant makes several other arguments, none of which are worthy of examination.[14] The only valid argument is that plaintiff demands excessive sanctions. Plaintiff requests that the Court dismiss defendant's claims outright. This demand is too harsh and it only punishes one of the people to blame. Defendant's attorney, John Roche, is the person who signed the confidentiality agreement and the person who chose to disclose the confidential information in the memoranda. As an attorney, Mr. Roche should know what information can legally be disseminated through legal memoranda. But defendant is not wholly without blame. He should have instructed his attorney to cease publishing this information. Therefore, defendant and his attorney, Mr. Roche, are jointly liable for the reasonable attorneys' fees and costs incurred by plaintiff in its motion for sanctions.[15] The Court will strike from the record defendant's Answer (#7), ¶ 23 of defendant's Amended Answer (#21), the attachment to defendant's Notice (#18.4), and the sealed document attached to defendant's Memorandum in Opposition to the Motion for Sanctions (#47.5). If defendant wishes to re-file these documents, all references to confidential information must be removed and any sealed documents must be filed properly.

## *Plaintiff's Motion to Strike*

---

[14] Defendant's other arguments are:
(1) The confidentiality required by Local Rule 16-6.04 ends when the mediation is resolved because the Rule applies to "parties" to the mediation. Once the dispute is resolved, the defendant is no longer considered a party.
(2) Defendant can violate the confidentiality agreement by quoting from mediation documents because plaintiff made similar statements publicly.
(3) The Court does not have jurisdiction to stop defendant from violating the confidentiality agreement.

[15] "The power of a court over members of its bar is at least as great as its authority over litigants. If a court may tax counsel fees against a party who has litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse judicial processes." Roadway Exp., Inc. v. Piper, 447 U.S. 752, 766, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980).

The Court will next address Plaintiff's Motion to Strike Defendant's Amended Answer (#30), filed May 31, 2005. In this motion, plaintiff requests that the Court strike Defendant's Amended Answer, it its entirety, under Federal Rule of Civil Procedure 12(f) because the document contains "repeated irrelevant, immaterial, impertinent, and scandalous allegations."[16]

Under Rule 12(f) of the Federal Rules of Civil Procedure, "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." NN&R Inc. v. One Beacon Ins. Group, 362 F. Supp.2d 514, 525 (D.N.J. 2005) (internal quotations omitted). Although these motions are generally disfavored, Circuit Sys., Inc. v. Mescalero Sales, Inc., 925 F. Supp. 546, 548 (N.D. Ill. 1996), the Court enjoys "liberal discretion" in employing this measure. Nationwide Ins. Co. v. Cent. Mo. Elec. Co-op., Inc., 278 F.3d 742, 748 (8th Cir. 2001).

Plaintiff is correct in stating that defendant's amended answer contains many gratuitous and unusual statements. It is the Court's assumption that the Defendant intended to inflame the Court with his counsel's strange claims. The Court is not swayed by counsel's unusual rhetoric. But striking Defendant's amended answer is unnecessary. Considering the endless stream of memoranda flowing from both parties, the Court denies Plaintiff's Motion to Strike (#30). As a final note, the Court would like to recognize the incredible contentiousness of this lawsuit. At times, the parties have conducted themselves in a remarkably unprofessional way. Before continuing with this suit and future litigation, all involved should heed the words of Justice O'Connor. "I believe that the justice system cannot function effectively when the professionals

---

[16]Plaintiff's Motion to Strike at 1.

16

charged with administering it cannot even be polite to one another. Stress and frustration drive down productivity and make the process more time-consuming and expensive. Many of the best people get driven away from the field. The profession and the system itself lose esteem in the public's eyes. In my view, incivility disserves the client because it wastes time and energy--time that is billed to the client at hundreds of dollars an hour, and energy that is better spent working on the case than working over the opponent."[17] Representation need not be acrimonious to be zealous.

**IT IS HEREBY ORDERED** that plaintiff's Motion to Dismiss (#32) is **GRANTED** in part and **DENIED** in part. Counts 8-11 of Defendant's Amended Counterclaim are hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that the requests in Counts 1 and 4 of Defendant's Amended Counterclaim be **GRANTED**. Plaintiff must indemnify defendant for all reasonable attorneys' fees and costs incurred in defending the class action. The monetary value of this judgment is to be determined upon production of further evidence.

**IT IS FURTHER ORDERED** that Defendant's Motion for Partial Summary Judgment (#23) is **GRANTED** in part and **DENIED** in part. Summary judgment is granted as to Counts 3 and 6 of Defendant's Amended Counterclaim. Plaintiff must indemnify defendant for all reasonable costs and attorneys' fees incurred in defense of the dismissed wire fraud charges. The monetary value of this judgment is to be determined upon production of further evidence.

---

[17] Justice Sandra Day O'Connor, Remarks to an American Bar Association Group on "Civil Justice Improvements" (Dec. 14, 1993).

**IT IS FURTHER ORDERED** that plaintiff's Motion for Partial Summary Judgment (#77) is **GRANTED** in part and **DENIED** in part. Defendant must reimburse plaintiff for all monies advanced for the defense of the conspiracy charge. Counts 2 and 5 of defendant's Amended Counterclaim are dismissed. The monetary value of this judgment is to be determined upon production of further evidence.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Sanctions (#35) is **GRANTED**, defendant and John Roche are jointly liable for plaintiff's reasonable costs and attorneys' fees relating to its Motion for Sanctions.

**IT IS FURTHER ORDERED** that Defendant's Answer (#7), ¶ 23 of Defendant's Amended Answer (#21), attachment 4 to Defendant's Notice (#18.4), and attachment 5 to Defendant's Memorandum in Opposition to the Motion for Sanctions (#47.5) be stricken from the record.

**IT IS FINALLY ORDERED** that Plaintiff's Motion to Strike Defendant's Amended Answer (#30) is **DENIED**.

Dated this 25th day of October, 2005.

_____
SENIOR UNITED STATES DISTRICT JUDGE